The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, everyone. We have Judge Beatty with us by video. Judge Beatty, can you hear us? Yes, I can. Thank you. All right. The cases will be called in the order listed on the docket. The first case on calendar for argument is United States v. Davenport. Counsel for appellant, please approach and proceed. Good morning, and may it please the Court. Tripp Johnston on behalf of Draco Flama, who is charged as Jesse Davenport. I know that we have seven issues on appeal and ten minutes to argue, but I'm going to do my darndest to save a minute for rebuttal. All right. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. All right. And with that in mind, I'd like to begin with the first issue, one that would obviate the need to address the other issues in this case, the issue of constructive amendment. Here, the jury instructions unequivocally permitted the jury to convict Mr. Flama under any of three distinct theories of liability. Count one was a conspiracy to exploit a minor. However, when the judge instructed the jury on this four-count indictment, he told them, quote, that to prove this, there must be an agreement between two or more persons to commit at least one crime as charged in the superseding indictment. This is not what the grand jury passed on. Counsel, before we go any further with this, is that issue preserved? Yes, Your Honor, and that's a good question. And I think the government spent quite a bit of time trying to explain why this cannot be brought here. Mr. Flama made a timely objection both at the jury instruction. Well, I have a different question about this. Wasn't there a prior appeal in this case? Correct, Your Honor. And was that issue raised in the prior appeal? No, Your Honor. So why doesn't that foreclose you from raising that here? Because this Court in U.S. v. Robinson, I believe in 1992, held that an ineffective assistance of counsel claim, which essentially this is, the ineffective assistance of his appellate counsel on direct appeal to raise an issue that would have reversed his conviction, is allowed in certain circumstances. Well, ineffective assistance counsel claims are generally not considered on direct appeal, which is where we are. That's correct, Your Honor. But Robinson said there are two circumstances where it would be appropriate to consider this. And just to step back, with the practicality in mind that Mr. Flama has all of his 2255 rights still intact. Precisely. So he could raise that ineffective assistance of counsel in that proceeding. He could, but I think the Court in Robinson was mindful of many things, including the need to save resources. So it's said when, one, the record is clear, and there need be no further record, and I think the record is clear here on the constructive amendment. We don't need declarations or anything else. Well, counsel, a further complication is that this issue was ineffective assistance of counsel was not raised in your opening brief. It was, Your Honor. Where? Well, I believe it was in footnote 7. Footnote counsel? Yes, Your Honor. That's correct. I said to the extent the government would argue that this issue could not be raised on this appeal, it could be raised under United States v. Robinson. But that's not an argument. It was an argument, Your Honor. I'm sorry. That's a footnote. Arguments generally have case citation, reasoning, analysis. There was case citation and reasoning analysis. What page are you? You have page 24, footnote 6? Sorry. Let me pull that up here. So you're saying that your statements in footnote 6 on page 24 sufficiently raise the ineffective assistance of counsel argument that we should consider it on direct appeal? Correct, Your Honor. Okay. Why does this argument have any merit anyway? I mean, when you focus on one part of the instructions, but there are other parts of the instructions that I think give more context to that one sentence. Well, the government pointed to the fact that it said in order to, let me just get to the actual language, that it is a conspiracy to sexually exploit a minor. But then the judge read an instruction that said to prove the sexual exploitation of a minor, the conspiracy to sexually exploit a minor, that all the jury needed to find was that the defendant conspired to commit one of any of the charges in the indictment. That is as clear as can be that the court went beyond what the grand jury had passed on. That is a constructive amendment of the indictment. The jury could have convicted Mr. Flama for conspiring to receive the images or conspiring to distribute those images. Now, the government says, but in the next part of the instructions, the court instructed on the elements of sexual exploitation of a minor. But at best, that creates still a fatal ambiguity for the jurors. Mr. Flama objected when the court said in the first instance that he could be convicted for conspiring to commit any of the offenses in the indictment, and he explained that means the jury could convict me for conspiring to receive or distribute, and the court overruled him. So it was clear to the jury that they could do that. Would you mind moving to the argument about the 2G 2.1B4 enhancement? What is your argument as to why that enhancement shouldn't apply? Thank you, Your Honor, because I think that is an important issue. And it comes down to a reading of this Court's decision in Shouse. And Shouse said the actual infliction of pain is not enough. Quote, our case law demands more than that. It also requires the taking of delight in inflicting pain or in acting cruelly or violently. Right. So why was that not met here? Well, in this case, there was a 51-second video. The allegations are that the minor said, ouch, that hurts. There's no dispute about the facts. Why isn't that cruel? Well, Your Honor ----  I'm not here to defend the crime. I am here to make a distinction between what could be incidental or unintentional harm that causes pain, and that that would be enough to have an enhancement. So what's our standard of review? The standard of review for the law is de novo. What's the standard of review on whether or not the cruelty prong was met? What's our standard of review on that? Well, if it was any facts, it would be for clear error. But the judge made no factual findings other than the ones that the government and I agree on. But that in and of itself is a factual finding, isn't it, whether or not the content of the guidelines was met? Isn't that a factual finding? Well, Your Honor, I would disagree because, well, here the court did the appellate court no favors. There was no analysis or discussion of what the court did. Well, just the finding that that guideline was met is a finding. Well, then we'd have to look at what the legal reasoning was. Was it pain that was inflicted, quote, upon the child? Well, there's no question that there was pain because the child said ouch. Yes, there was pain. There's no dispute about that. The question is whether it was sadistic or cruel. Well, sadistic or violent. And then as defined as not just cruelty, the court said, I believe, unusually cruel, and I don't think that there was any finding here. Sorry, it's excessive cruelty. So we do have to go through an analysis that the court didn't go through below. But why isn't this excessively cruel? Well, to be blunt, in this case, it was the use of a pinky finger. But in a very small child, though. Correct. And so to see what was excessively cruel about the pinky finger, I mean, you could imagine other scenarios, and I'm not going to explicate all those here in court. But if you take Shouse's definition of sadistic, the court made no findings that would show that it was sadistic. Well, it's not simply sadistic. You're focusing on that, but the guideline doesn't simply say sadistic. No, it also says violent. And the violence prong was defined by the court in Shouse's violence as applied in the, quote, unquote, narrow context of the enhancement definition. It also says cruel. Well, what we have in 2G 2.1b4 is, quote, sadistic or masochistic conduct or other depictions of violence. And Shouse then broke that down, and for sadistic, gave three examples. The definition is composed of three disjunctive elements. Pain that is inflicted upon a love object, quote, is a means of obtaining sexual release. So the pain itself would have to be intended to cause that sexual release. Quote, the second one is delight in physical and mental cruelty. There's no indication that Angela Martin, the person who actually did this, was showing any delight. There was no finding by the court in that. In fact, when the government tries to go to intent, they point to an after-the-fact text by Mr. Flama that he asked her to cut her nails. So his intent certainly wasn't. What was the purpose of the activity then? Well, the purpose of the activity, I can't get into Angela Martin's mind. What I'm talking about in terms of your client. Well, the allegation is that he asked Angela Martin to produce a video. For what purpose? For sexual gratification. For his sexual? Exactly. Yes, but the question is whether the pain itself is tied to that sexual gratification. And the record actually is clear in the other direction that Mr. Flama had no interest in that. Another quote that the government didn't even cite, and I'm going to try to stop here so I've got at least a few seconds of rebuttal. We'll give you a minute for rebuttal. Thank you. It comes from the PSR in paragraph 22. Quote, I want her to enjoy sex, not be traumatized by it. So, again, we just have to look at the pain and what its purpose was in this case. And there's nothing other than incidental or unintentional pain. So he said he wanted the toddler to enjoy sex. Yes, Your Honor. But I would argue that that's not tied to the pain itself. All right.  Thank you, Counsel. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Roger Yang for the United States. I was counsel at resentencing. This Court should affirm the resentencing of Mr. Davenport because the district court properly used the 2012 sentencing guidelines calculations to come to a correct guidelines calculation, applied the sadistic and violent conduct enhancement that existed in the 2012 edition, and then properly applied a substantively reasonable sentence to Mr. Davenport. Counsel, what's your response to opposing counsel's contention that the constructive amendment argument was sufficiently preserved? This Court has concluded that simply by invoking ineffective assistance of counsel is not sufficient to overcome a waiver. This Court appropriately considers that counsel can bring this up again on a full record with the information regarding what the appellate counsel was thinking and other information to properly assess whether or not this is ineffective assistance of counsel. Simply characterizing something as ineffective assistance of counsel to try to prove is insufficient to overcome the waiver itself. What about the prior appeal? Does that have any effect on whether or not this issue is preserved? Yes, Your Honor. It's where the waiver occurred. Appellate counsel appealed many, many issues regarding not only the guilt phase but the sentencing phase and was successful regarding the ex post facto issue and another enhancement. And yet we will eventually find out whether consciously or not assessed this record and decided not to appeal this specific issue. And the government's position regarding the merits of the issue are also clear that this really had no merit and therefore even on an ineffectiveness Mr. Davenport would not be able to show any prejudice because it was not a constructive amendment. Can I ask you about it? I'm sorry. If we conclude that it's waived, do you agree that we are still permitted to reach this issue? No, Your Honor. If you find that it's waived, the Court does not need to consider the issue at all. But couldn't we? We may not need to, but we could. Okay. There is a narrow instance where the Court can essentially just reject the issue out of hand if it finds that there's essentially no merit to the issue. You can find that the record is sufficiently developed to allow you to address the merits of the ineffective assistance of counsel claim. Separate and apart from the ineffective assistance of counsel claim, the constructive amendment issue on its own, could we elect to address that even though it was not brought up in the prior appeal? I think that's the question. Yes, Your Honor. If you find that you first have to find that the record is sufficiently developed and clear to allow you to address the merits of the underlying claim. In the case law that I've read regarding this narrow option for the Court, it's essentially to reject the merits of the claim because either there's no showing of prejudice or... We're not talking about the ineffective assistance of counsel. Scrap that from your thinking. On the constructive amendment issue, if there were no ineffective assistance of counsel claim, on the constructive amendment claim, which was not brought forth in the prior appeal, can we exercise our discretion to address that issue? Yes, Your Honor. But you do have to make that first conclusion that the record is sufficiently developed to reach the merits of the claim. What case are you relying upon to support the argument that the record has to be sufficiently developed for us to address the issue if it has not been brought in a prior appeal? What case says that? I have, unfortunately, a First Circuit case discussing this specific issue. Not in the context of ineffective assistance, in the context of a case that was not of an issue that was not brought on appeal. Yes. In that, in the United States v. Messner, and unfortunately, I'll have to submit a 28-J letter to alert the Court to this, but it was decided on June 22, 2022. Is that a Ninth Circuit case? It is a First Circuit case. Well, that's not binding on us. So I'm asking you if you have a Ninth Circuit case that says if an issue is not raised in a prior appeal, the Court has discretion to consider it only if the record is sufficiently developed, because you made that representation. So I'm curious what case supports that proposition. If you don't have one in mind, you can just go ahead. Thank you, Your Honor. We'll figure it out. Can I ask you about a different issue, which was the comments at resentencing by the district court about the Gorian lifestyle and the judge's recollection that at some point the defendant had said something like, what do you think, would you like it, and the judge recalled that, and I think you've conceded that there's no evidence that that was, that exchange happened, or at least we have no record evidence of that. What do we make of that? First, the Cole-Gorian lifestyle discussion was in the context of whether or not to apply the leadership enhancement, which after the original appeal became law of the case, and therefore there cannot be any prejudice from this recollection and this back and forth. But with regard to this Gorian lifestyle, the district court's recollection was substantially accurate with regard to the overall exchange. And the defendant invited the court at resentencing to revisit the Gorian lifestyle and even to go to the Wikipedia page. In excess of the record at 152, there's a citation to the Wikipedia page regarding the Gorian subculture. But the motion to eliminate hearing, the court did, told the defendant that it had to look this up. And Mr. Davenport affirmed that the court's understanding in this context was accurate. The court said, after Mr. Davenport explained the science fiction origins of this subculture, the court said, correct, but it's part of depicting the master-slave relationship. And then Mr. Davenport says, yes. And then the court says, and I believe that that's relevant to bring up, because it would help to show how the connection was made between yourself and Ms. Martin and that she could possibly have been, for lack of a better term, you're the master and she's the slave. You're directing her what to do at the time, and that is all part of the lifestyle. And Mr. Davenport responds, well, yes, you know, domination and submission, of course. But even putting the Gorian lifestyle aside, there was plenty of record evidence regarding the defendant's leadership role, which the court affirmed on direct appeal. I don't want to put it aside too much. I think what the defendant is saying is there was a particular comment by the court about some recollection, a back-and-forth between the court and the defendant about the Gorian lifestyle in which the defendant suggested to the judge he might like it, and the judge was particularly offended by that. And now we don't have evidence of that in the record. So what do we do with this? Nothing, Your Honor, because it was not prejudicial to Mr. Davenport at sentencing. He received the exact same sentence as he did before. And even during that exchange, Mr. Davenport understood that the court was only bringing this up in the context of applying the leadership enhancement. In Excerpt of the Record at 25, there's the exchange, and then the defendant responds at the end, I did not have her do anything to that child. It's the defendant contesting the application of the leadership enhancement. Leadership enhancement was already law of the case, and there was no prejudice based on the sentencing and how the sentence was actually done. Counsel, before you leave, could you address the opposing counsel's objection to application of Guideline Section 2G2.1B4? Yes, Your Honor. Even in Shouse, the court stated that it should apply where there are depictions of violence, and defined violence as anything that, the use of force that would cause injury or abuse, essentially. Or excessive cruelty. Or excessive cruelty, yes, Your Honor. And in this case, the district court looked at the entire record and concluded that based on its recollection, it certainly would apply. In its original sentencing, it did cite to the fact that the video depicts the toddler saying ow and ouch. And reiterates, again, at resentencing. But even on this record, the district court discussed other aspects of what happened where the defendant was discussing either the video or what he wanted to do to the child that indicated a desire to have Ms. Martin use sex toys on the child, a two-and-a-half-year-old child, to stretch out her vagina and anus so that when the defendant got to Connecticut and he could perform sex acts on the child, and it would be less traumatic because she had been prepped for this activity. Is that relevant to the enhancement? I mean, it says that the offense involved material that portrays sadistic and masochistic conduct or other depictions of violence. So are we limited to the video itself and the testimony surrounding the creation of the video? No, Your Honor. The district court was required to conclude by preponderance of evidence that this defendant, and the district court was allowed to consider all the evidence regarding what and why this video was created, including what the defendant's reaction was to the video and his expressed desires towards the victim. And the district court did so not only by accepting the PSR descriptions, but also specifically referring to the abuse of the victim in the original sentencing and also, again, at resentencing. That is a sufficient record, putting aside Ithacorian subculture and any other evidence, to apply this enhancement to this defendant. All right. Thank you, counsel. Thank you. Any further questions? Let's give two minutes for rebuttal. Thank you, Your Honor. Let me just start with the last point and implore the Court to read carefully pages 1106 and 1107, where the Court does break down what it means to be sadistic depictions and then what it means to be violent. I believe the government is playing a little loose with the standard that must be applied, and I have recited this in detail on page 16 through 18 of my reply brief. So you think it's not violent, but the question is whether it's sadistic? Well, it's certainly not violent because you have to injure so as to injure abuse. So, yeah, if there's a closer question, it would be sadistic. But, again, the Court gives the three-pronged definition of what's sadistic, and none of the facts in this case would meet that. So in your view, it's not violent to penetrate a toddler with a finger, an adult's finger, regardless of which finger it was, a pinky finger even. So you think that's not violent? It is absolutely criminal to do that, Your Honor, and that would be the source. But you said it's violent, right? It's not violent? Do you say that's not violent? Well, there would be no enhancement. There would be no four-level enhancement. But to answer the question I asked you, are you representing to the Court that that's not violent? Yes, under the definition provided in Shouse, I am. With respect to the constructive amendment, the Government could point to no case that says this issue cannot be raised on a second appeal. To the extent there be any argument, it would be that it wasn't raised in the first appeal. That's why I pointed the Court to United States v. Robinson, 967 F. 2nd, 287 at 290, which explains when this Court can and should, for a variety of reasons, including reserving resources. We have fully briefed this issue. We're here. It would only be the same issue in a 2255 that would delay justice in this case, if I'm right on the merits. And then, finally, with respect to the Gorian license file, I know, Judge Brest, you had a couple of questions. It breaks down into two things. First, what do you do with him saying that the Court recalling something that he would never forget, that no one can find in the record about, did you like it, you know, what did you think of it, the highly inflammatory language that certainly could have affected any sentence in this case, whether it's the same 50-year sentence he got the first time or the 50-year sentence he got the second time. But the second part of the Gorian lifestyle issue, and I'll conclude quickly, is the Rule 32 violation. The government says that there's a Wikipedia link in Mr. Flama's, I believe, objections or sentencing memorandum below on ER 152, but that's not the issue. The question is, what did the judge look at when he said, I had to research this on my own and find this 10- or 12-step process? This was the only thing the Court addressed in the context of 3553A. He didn't consider Mr. Flama's lifetime of abuse, his diagnosis at an early age of developmental disorders, the fact that he had been taken from home to home to home 17 times over 18 years. That's the only thing the judge focused on, and I think that's a separate and independent reason for a vacatur of the sentence and remand on this case. Kagan. Counsel, let me ask you in terms of the waiver of arguments that were not made in the prior appeal. Are you saying that our only ability to hear those arguments is if we go under the ineffective assistance of Counsel Prong? I haven't ‑‑ I have not made that argument. I have argued that I can bring that here. The government responded by saying you cannot, and that's why I pointed out, in anticipation of the government's argument in footnote 6. Our cases seem to say, and I'm looking at Munoz v. Imperial County, are you familiar with that case, 667F2-811, and United States v. Niagara 147F3-875, that if an issue is not raised in a prior appeal, it cannot be raised in a subsequent appeal. Our case law seems to say that. So that's why I'm curious about why you think we can nevertheless decide this issue. Well, I'll just keep it brief and say that if the government's reading of Niagara is correct, I don't recall Munoz from the briefing, but I certainly will go with that. Well, that's something my excellent law clerk found. And kudos to your clerk, but I would ask the Court to seriously consider Robinson, because this is a case where the issue is full and brief, and if we prevail on the merits, there's no need to delay justice. All right. Thank you, counsel. Thank you, counsel. Thank you to both counsel for your helpful arguments in the case. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, BADE, BRESS